IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GERALD A. RESNICK ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Civil Action No. |
| ) | 2:17-cv-815 |
| CITY OF TROY, JASON REEVES, in ) | |
| his official and individual capacity as the ) | DEMAND FOR JURY TRIAL |
| MAYOR OF THE CITY OF TROY, ) | |
| AND ROBERT JONES, GREG MEEKS, ) | |
| MARCUS PARAMORE, STEPHANIE ) | |
| BAKER, WANDA HOWARD ) | |
| MOULTRY, in their official and ) | |
| individual capacity as THE CITY ) | |
| COUNCIL OF TROY, ALABAMA ) | |
| ) | |
| Defendants. ) | |

## COMPLAINT

Plaintiff Gerald A. Resnick ("Resnick"), for his Civil Complaint against Defendants City of Troy ("Troy"), Mayor Jason Reeves ("Mayor Reeves"), Robert Jones, Greg Meeks, Marcus Paramore, Stephanie Baker, and Wanda Howard Moultry, members of the City Council of Troy, Alabama (the "City Council") (collectively the "Defendants"), states as follows:

### INTRODUCTION

1. This case arises out of Gerald Resnick's efforts to assist Troy in locating an electrical power provider. Southern Wholesale, a subsidiary of Southern Company, notified Troy in 2010 that it would discontinue its practice of

providing electric service at wholesale rates after some thirty-five years of providing such wholesale service.

2. Resnick and the then Mayor of Troy, Jimmy Lunsford ("Mayor Lunsford"), signed an agreement ("the Agreement") to pay Resnick a 2 percent commission on any contract, including extensions and renewals, that Troy entered into as a result of Resnick's efforts. The Agreement further recognized that Troy was under a duty to protect Resnick's trade secrets and confidential information shared during the procurement of power services for Troy. Significantly, an element of Troy's duty to protect Resnick's confidential information was its duty not to "circumvent" the Agreement, and thus not to thereby utilize Resnick's confidential information. The Troy City Council subsequently approved the Agreement by a resolution on July 21, 2012. The Agreement is attached to this Complaint as Exhibit A.

3. As a result of Resnick's efforts, Troy entered into an agreement with Constellation Energy Commodities Group ("Constellation") and its affiliate Exelon Generation Company, LLC ("Exelon"), for the provision of electric power at the extremely favorable price of $.05 per kilowatt-hour.

4. The Defendants have violated the Agreement, have utilized Resnick's confidential information to violate the non-circumvention provision, and thus have deprived him of his valuable property without due process. Resnick seeks relief to

protect his confidential information as well as his property interest in the income stream represented by the 2 percent commission on the Constellation power contract.

## PARTIES, JURISDICTION, AND VENUE

5. Resnick is a resident citizen of the State of New York. He is not a resident citizen of any other State.

6. The City of Troy is a municipal corporation that is incorporated under the laws of the State of Alabama and maintains its principal place of business in Alabama. Troy is therefore a corporate citizen of the State of Alabama, and is not a corporate citizen of any other State.

7. Mayor Jason Reeves, the current Mayor of Troy, is a resident citizen of the State of Alabama, and is not a resident citizen of any other State.

8. Robert Jones, a member of the City Council of Troy, is a resident citizen of the State of Alabama, and is not a resident citizen of any other State.

9. Greg Meeks, a member of the City Council of Troy, is a resident citizen of the State of Alabama, and is not a resident citizen of any other State.

10. Marcus Paramore, a member of the City Council of Troy, is a resident citizen of the State of Alabama, and is not a resident citizen of any other State.

11. Stephanie Baker, a member of the City Council of Troy, is a resident citizen of the State of Alabama, and is not a resident citizen of any other State.

12. Wanda Howard Moultry, a member of the City Council of Troy, is a resident citizen of the State of Alabama, and is not a resident citizen of any other State.

13. Troy conducts its business by act of its Mayor and the City Council.

14. This Court has subject matter jurisdiction over this civil action pursuant to 28 U.S.C. § 1332(a)(1) in that there is complete diversity between all plaintiffs and all defendants and the amount in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs.

15. This Court also has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, in that this civil action arises under the laws and Constitution of the United States. Defendants have deprived Plaintiff of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution, and Plaintiff brings this action pursuant to 42 U.S.C. § 1983.

16. Venue is proper in the United States District Court for the Middle District of Alabama under 28 U.S.C. § 1391(b)(1) and (2). The Defendants all reside in this District, and a substantial portion of the events giving rise to this action occurred here.

## BACKGROUND

17. Resnick is a businessperson and an attorney with extensive experience in power generation and power purchase agreements. His experience allows him to match the right products, services, and solutions to his customers' specific needs.

18. Troy maintains a public utility service, providing electrical services to its residents and to local industries. The city originally secured wholesale pricing on its electric service from Southern Wholesale. In 2010, Southern Wholesale informed Troy it would no longer provide electric service at wholesale rates and that Alabama Power would be Troy's new service provider. The change in service from Southern Wholesale to another vendor would have resulted in rate increases to Troy. Adjusted for other variable costs, Troy would have experienced based on its own review, a minimum cost increase of $27,000,000.00.

19. Following Southern Wholesale's announcement that it would not continue to supply wholesale electric power, Troy entered into discussions with Resnick to locate an alternate source for the approximately 90 Megawatts ("MW") of electric service Troy needed.

20. Initially, Resnick investigated, at his own expense, the possibility of constructing a co-generation plant to serve Troy and its industrial and residential consumers of electrical power.

21. Resnick first researched potential solutions in a gas-fired co-generation plant, wind plant, or solar plant.

22. Resnick contacted major generator manufacturers such as GE and Rolls Royce with whom he engaged in substantial discussions exploring the possibility of building an electrical generation facility in Troy. Concurrently, Resnick and Mayor Lunsford consulted with the Southeast Alabama Gas District on a timeline and costs to build a new gas line to Troy.

23. Resnick additionally contacted the Tennessee Valley Authority, J.P. Morgan, Goldman Sachs, and others to consider service from those entities' generating facilities in the Southeast.

24. Resnick worked with local developers to budget for a generation facility. Troy even acquired a 22-acre site to accommodate such a facility. Ultimately, however, Resnick and Troy determined that the total cost structure for a co-generation facility, considering construction, amortization, and other factors, would result in the unfavorable $.07 per kilowatt-hour price for electrical consumers.

25. As a result, Troy entered into an Agreement with Resnick under which Resnick was to locate a supplier who could provide electrical power for less than the $.07 kilowatt-hour cost associated with a co-generation facility.

26. The Agreement between Troy and Resnick included a provision providing in part that Resnick was to receive a 2 percent commission on contracts entered into by and between Troy and a vendor introduced by Resnick, together with a 2 percent commission on renewals or extensions of such contracts. Following the execution of the Agreement, Resnick made available to Troy substantial confidential information that he had acquired during his career, including but not limited to the identities of suppliers, the terms on which they might supply power, and their pricing information. This information was valuable property of Resnick.

27. As a result of Resnick's efforts, on December 15, 2012, Troy entered into a contract with Constellation Energy Commodities Group ("Constellation"), an electric service market provider. By securing a power purchase agreement between Troy and Constellation, Resnick completed his part of the bargain, and became entitled to a 2 percent commission on the Constellation contract and any renewals. The income stream represented by that 2 percent commission is a valuable property right.

28. Pursuant to the Agreement, Resnick utilized his knowledge and connections for the benefit of Troy and expected to be compensated for it. The parties intended to compensate Resnick by means of the 2 percent commission. The intent of the parties, moreover, was to protect Resnick's property interest in his

confidential information and knowledge and expertise, specifically his knowledge and expertise in the electric power industry. By entering into the Agreement, Troy recognized that Resnick had a valuable property right (1) in the income stream represented by the 2 percent commission, and (2) in the know-how and confidential information that Resnick utilized in securing the Constellation agreement.

29. Exelon Generation Company, LLC (Constellation's affiliate) guaranteed the power purchase agreement for five years or from January 1, 2012, to December 31, 2017.

30. Resnick invested substantial time and effort to create alternate solutions and initiatives to provide the most cost-effective technologies and services to Troy. He identified and maintained relationships with vendors to facilitate the Troy initiative and determined resources to secure a cost-effective solution and save Troy tens of millions of dollars annually. Resnick's business information, customer relationships, and goodwill are of paramount significance to his business reputation and success.

31. Troy provided a complete and valid written contract executed by both parties in which Troy agreed to keep Resnick's trade secrets and confidential information protected and confidential during the term of the Agreement and after with respect to renewals.

32. In exchange for the disclosure of potential resources by Resnick, Troy agreed, and the Agreement obligated Troy, to refrain from negotiating with any of the potential resources identified by Resnick without giving Resnick prior notice of the negotiation. Any outside negotiations would constitute a breach of the written Agreement:

> As it pertains to a transaction contemplated herein, the City will not circumvent or attempt to circumvent you in connection with any business opportunity resulting from confidential information disclosed by you. The parties hereto will maintain complete confidentiality regarding the sources and therefore will not disclose any information regarding such sources other than to the City's directors, officers, etc., who need to know in the ordinary course of doing its business. The participants in the proposed new power purchase agreement(s) or public/private joint venture recognize that the information regarding sources are exclusive and valuable contacts of yours and that it will not enter into any direct negotiations or contracts with sources introduced by you and Jeff Miller <u>without full disclosure to you</u>.
>
> E. Non-Disclosure
>
> The City agrees to maintain complete confidentiality regarding the several parties and confidential sources introduced by you and therefore will not disclose any information regarding such sources other than to the various City officials and its directors, officers, etc., who need to know in the ordinary course of doing its business. The City firmly asserts that the Confidential information provided by you is valuable and proprietary to you.

(*See* Exhibit A (emphasis added).)

33. In exchange for Resnick's confidential information, Troy agreed not to utilize that information and promised that before it ever entered into negotiations

9

for a new power purchase agreement with any of the sources Resnick provided, it would give "full disclosure" to Resnick.

34. Nevertheless, the Defendants, acting under color of state law, have engaged in a scheme to misappropriate Resnick's confidential information and to deprive him of the income stream represented by the 2 percent commission. Despite knowing that Resnick had obtained for them the lowest cost supplier in Constellation/Exelon, the Defendants cooked up a sham request for proposal ("RFP") to create the appearance of attempting to enter into a new contract as opposed to an extension or renewal that would implicate the non-circumvention provision quoted above.

35. Thus, instead of renewing or extending the Constellation/Exelon contract, the Defendants sent copies of the sham RFP to Constellation/Exelon and nine other potential suppliers, knowing that the Constellation/Exelon would be the low-cost provider and would ultimately receive the contract. Defendants did not give Resnick full disclosure before entering into these negotiations.

36. Upon information and belief, acting under color of state law, the Defendants have caused Troy to enter into a replacement contract with Constellation/Exelon without any disclosure to Resnick and in violation of the terms of the Agreement.

37. The Defendants' actions are in violation of their contractual obligations. They also constitute a deprivation of Resnick's valuable property—consisting of the 2 percent income stream and confidential information—without due process, and further constitute an unconstitutional taking of Resnick's personal property.

## FIRST CAUSE OF ACTION
### Breach of Contract

38. Resnick repeats, alleges, and incorporates by reference the allegations contained in the preceding paragraphs.

39. Resnick's Agreement is a valid and enforceable contract. The covenants in the agreement are reasonably necessary to protect legitimate protectable interests in trade secrets, confidential information, relationships, and goodwill.

40. Resnick has performed all of his obligations under the Agreement.

41. Troy is breaching the Agreement by circumventing Resnick in at least one of the following ways:

   A. By failing to provide Resnick with sufficient notification of Troy entering into direct negotiations with sources introduced by Resnick;

   B. By entering into a contract with a source introduced by Resnick; and

   C. By failing to appropriately compensate Resnick for his services.

42. Because of any one of these breaches of the Agreement, Troy has injured Resnick, and he faces irreparable injury. Resnick faces the threat of losing his trade secrets and goodwill in amounts that may be impossible to determine; wherefore, Resnick seeks damages in an amount to be determined by a struck jury.

## SECOND CAUSE OF ACTION
## 42 U.S.C. § 1983

43. Resnick re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

44. Resnick has a property right in his Agreement with Troy and a property interest in his expectation of continued engagement with Troy as well as the revenue streams generated by the Agreement.

45. Defendants' termination of Resnick's Agreement, of his expectation of continued engagement, and of the revenue streams generated by the Agreement has deprived Resnick of his property rights and interests.

46. Because Resnick is retired and his sole source of income was the revenue generated by the Agreement, Defendants' termination is a direct violation of his property interests without constitutionally required procedural due process.

47. Defendants' termination has deprived Resnick of his liberty rights.

48. Defendants' unlawful termination of the operation of a lawful Agreement has deprived Resnick of revenue due to him.

49. Resnick has been deprived of these rights and interests without due process of law as Resnick was not afforded notice (as required by the Agreement) before Defendants terminated the Agreement and negotiated with sources Resnick provided to Defendants. Resnick has been afforded no adequate process under law. As a result, he has been and will continue to be deprived of his rights without a chance to be constitutionally heard and has therefore been deprived of its rights in violation of the Fourteenth Amendment to the United States Constitution.

50. Defendants' termination of Resnick's Agreement is an action taken under color of state law.

51. Defendants' termination of Resnick's Agreement violates his procedural due process rights under the Fourteenth Amendment because he possessed an expectation of continued engagement with Troy and Defendants wrongfully terminated that engagement without notice and a hearing.

52. Under the Fourteenth Amendment, Resnick is entitled to be heard on why Defendants' termination of Resnick's Agreement is improper before Troy, Mayor Reeves, and the City Council further interfere with Resnick's rights.

### THIRD CAUSE OF ACTION
### Declaratory Judgment

53. Resnick re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

54. Defendants' conduct and actions are inconsistent with and contrary to federal and Alabama law.

55. Resnick has suffered and will continue to suffer significant injuries for which he has no adequate remedy if Defendants are allowed to flout the requirements of federal and Alabama law.

56. Resnick is entitled to a judgment from this Court declaring that:

   (a) Defendants improperly terminated the Agreement; and

   (b) Resnick was entitled to proper notice and a proper hearing prior to the termination of his Agreement with Troy.

## FOURTH CAUSE OF ACTION
### Damages Claim under 42 U.S.C. § 1983 v. Individual Defendants

57. Resnick re-alleges and incorporates by reference the allegations contained in the preceding paragraphs.

58. Resnick brings this damage claim against the individual Defendants in their individual capacity.

59. The individual Defendants' conduct violated clearly established constitutional and statutory rights of which a reasonable person would have known.

60. The individual Defendants' conduct involved reckless or callous indifference to the federally protected rights of Resnick.

61. Because of the individual Defendants' unlawful conduct, Resnick has incurred, and continues to incur, significant damages.

## PRAYER FOR RELIEF

WHEREFORE, Resnick prays for the following relief:

A. That a court order require Troy to provide Resnick with sufficient notification of any contact or any direct negotiations or contracts with sources introduced by Resnick pursuant to the Agreement.

B. That Troy, along with its respective agents, employees, attorneys and those persons in active concert or participation with Troy, be enjoined by way of temporary injunction, preliminary injunction, and permanent injunction as follows:

1. From utilizing or disclosing Resnick's trade secrets and confidential information,

2. Directly or indirectly disclosing or utilizing Resnick's trade secrets and confidential information, and

3. Dealing directly or indirectly with parties introduced by Resnick without sufficient notification to Resnick.

C. That Resnick be awarded compensatory damages he has suffered, and prospectively will suffer in an amount to be proven at trial.

D. That Resnick be awarded exemplary damages as provided for under the law and for willful and malicious conduct.

E. That Resnick be awarded attorney's fees and costs of suit as permitted by law and pursuant to 28 U.S.C. § 1988.

F. For an accounting by Defendants, requiring a monthly accounting and verified statement of compliance with payments that are due to Resnick under any and all agreements and renewals of power purchase or other agreements with a party or parties introduced by Resnick.

G. For a constructive trust for the benefit of Resnick to be imposed upon all funds, assets, revenues and profits Defendants have to assure timely payment of the consideration reserved and payable to Resnick pursuant to the term of the Agreement with Troy.

H. That Resnick be awarded such other and further relief as the Court deems equitable and just.

Respectfully submitted,

/s/ William G. Somerville
WILLIAM G. SOMERVILLE
DENNIS NABORS
LAURA E. COLLINS
Attorneys for Plaintiff

**OF COUNSEL:**

BAKER, DONELSON, BEARMAN,
　CALDWELL & BERKOWITZ, P.C.
420 20th Street North, Suite 1400
Birmingham, AL  35203
Telephone (205) 328-0480
Facsimile (205) 322-8007
E-mail: wsomerville@bakerdonelson.com
E-mail: dnabors@bakerdonelson.com
E-mail: lcollins@bakerdonelson.com


PLEASE SERVE:

Marcus Parramore
105 Jo Street
Troy, AL 36079-2913

Jason Reeves
715 Wilson Drive
Troy, AL 36079-2954

Greg Meeks
203 Old Cabin Road
Troy, AL 36081-4628

Stephanie Baker
215 West College Street
Troy, AL 36081-2145

Wanda Howard Moultry
205 Williams Street
Troy, AL 36081-1813

Robert Jones
116 North Pine Ridge Drive
Troy, AL 36081-6102