IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| GERALD A. RESNICK, | ) |
| | ) |
|   Plaintiff | ) |
| | ) |
| v. | )   CIVIL ACT. NO. 2:17cv815-ECM |
| | )                   (WO) |
| CITY OF TROY, *et al.*, | ) |
| | ) |
|   Defendants | ) |

**MEMORANDUM OPINION and ORDER**

**I. INTRODUCTION**

The Plaintiff, Gerald Resnick ("Resnick"), filed this action against the City of Troy, Alabama ("the City"), its Mayor and its City Council alleging that the City breached its contract with Resnick. Resnick claims that he entered into a contract with the City to find an electrical power provider for the City, but the City breached the terms of the contract by entering into an agreement with the electricity provider without paying Resnick his promised commission. Resnick also alleges the City, Mayor and City Council's actions deprived him of due process, and he asserts a § 1983 violation premised on the Fourteenth Amendment. (Doc. 1). Resnick alleged diversity jurisdiction pursuant to 28 U.S.C. § 1332 and federal question jurisdiction pursuant to 28 U.S.C. § 1331 stemming from his claims brought pursuant to 42 U.S.C. § 1983 against the City, Mayor, and City

Council members.[1] He alleged supplemental jurisdiction under 28 U.S.C. § 1367(a) of the state law breach of contract claim and a declaratory judgment claim under "federal and Alabama law." (Doc. 1 at 14).

The Defendants filed a motion to dismiss (doc. 8) asserting that this Court lacks subject matter jurisdiction for two reasons. First, they allege that diversity jurisdiction is lacking because Resnick failed to join a necessary, non-diverse party, Jeff Miller, as a plaintiff. Next, they assert that the only claim that involves a federal question -- the § 1983 claim alleging a violation of procedural due process -- fails as a matter of law. The Plaintiff filed a response to the motion to dismiss (doc. 19) and a motion to amend the complaint (doc. 20). The proposed amended complaint adds the necessary party, Jeff Miller, as a named plaintiff, which destroys diversity of citizenship, but Resnick seeks to add a claim under the Defend Trades Secrets Act, 18 U.S.C. § 1836, *et seq.* ("DTSA") which further bolsters the Court's federal question jurisdiction. In reply, the Defendants oppose the Plaintiff's proposed amended complaint, and filed a renewed motion to dismiss (doc. 24) asserting that the proposed amended complaint does not cure the jurisdictional defects, and adding the DTSA claim is futile because the claim fails

---

1. The original complaint listed three individuals -- Stephanie Baker, Wanda Howard Moultry, and Robert Jones -- who Resnick now admits were not on the city council during the relevant time period. The proposed amended complaint removes these defendants and replaces them with Charlie Dunn, Sr. and John H. Witherington.

on the merits. In the alternative, the Defendants argue that the amended complaint is due to be dismissed for the reasons raised in their original motion to dismiss (doc. 24).

For the reasons explained below, the Court concludes that the Plaintiff's motion to amend (doc. 20) is due to be granted, the Defendants' original motion to dismiss (doc. 8) is due to be denied as moot, and the Defendants' second motion to dismiss (doc. 24) is due to be granted.

## II. BACKGROUND

As alleged in the amended complaint,[2] Gerald Resnick and Jeff Miller ("the Plaintiffs") entered into an agreement with the City of Troy, Alabama in 2012 to help the City locate an electrical power provider. According to an agreement signed by the Plaintiffs and the Mayor, the City promised to pay to the Plaintiffs a two percent commission on any contract that the City entered into as a result of the Plaintiffs' efforts. This agreement included "Non-Circumvention" and "Non-Disclosure" provisions in which the City promised to not use the Plaintiffs' confidential information to enter into an agreement for electrical power without

---

1. Because the Court grants the motion to amend, the "amended complaint supersedes the initial complaint and becomes the operative pleading in the case." *Krinsk v. SunTrust Banks, Inc.*, 654 F.3d 1194, 1202 (11th Cir. 2011) (quoting *Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1219 (11th Cir. 2007)). Consequently, the Court refers to Miller as a plaintiff for clarity and ease of understanding.

paying the Plaintiffs the promised two percent commission. (Doc. 20-1 at 22-23). The agreement specifically notes that "the information regarding sources are exclusive and valuable contacts" of the Plaintiffs and that the City would not enter "any direct negotiations or contracts with sources introduced by [the Plaintiffs] without full disclosure to [the Plaintiffs]." (Doc. 20-1 at 23).

Notwithstanding this agreement, the Plaintiffs allege that the City, through its City Council members, utilized information and efforts of the Plaintiffs to enter into a contract with an electrical power provider without paying the Plaintiffs their commission. According to the Plaintiffs, the City "cooked up a sham request for proposal" to circumvent the parties' written agreement, and as a result, violated the Plaintiffs' procedural due process rights to deprive them of their valuable trade secrets and deprive them of their income stream. (Doc. 20-1 at 11).

### III. MOTION TO AMEND

The Court first turns to the Plaintiffs' motion to amend the complaint (doc. 20). The amended complaint adds Jeff Miller as a necessary plaintiff which destroys diversity jurisdiction. Invoking the Court's federal question jurisdiction, the Plaintiffs reassert their Fourteenth Amendment due process claim brought pursuant to § 1983, and they include a claim pursuant to the DTSA, 18 U.S.C. § 1836, *et seq*. They reallege Resnick's breach of contract and declaratory judgment

claims.³ The Defendants oppose the motion to amend on the basis of futility, arguing that the trade secrets claim fails as a matter of law because the alleged violations took place before the Act's effective date. Thus, the Defendants argue that neither the trade secrets claim nor the § 1983 procedural due process claim is sufficient to invoke the Court's jurisdiction.

Pursuant to Federal Rule of Civil Procedure 15(a), the court "should freely give leave [to amend a pleading] when justice so requires." "Generally, '[w]here a more carefully drafted complaint might state a claim, a plaintiff must be given at least one chance to amend the complaint before the district court dismisses the action with prejudice.'" *Bryant v. Dupree*, 252 F.3d 1161, 1163 (11th Cir. 2001) (quoting *Bank v. Pitt*, 928 F.2d 1108, 1112 (11th Cir. 1991)). A "substantial ground" is required to deny leave, such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of amendment." *Reese v. Herbert*, 527 F.3d 1253, 1263 (11th Cir. 2008) (quoting *Burger King Corp. v. Weaver*, 169 F.3d 1310, 1319 (11th Cir. 1999)). The Court concludes that pursuant to FED.R.CIV.P. 15(a), the Plaintiffs should be permitted to amend the complaint to

---

3. The updated declaratory judgment claim omits any reference to federal law.

assert a claim under the DTSA. Thus, the Plaintiffs' motion to amend the complaint (doc. 20) is due to be granted.

## IV. MOTION TO DISMISS

The Court now turns to the Defendants' motions to dismiss (docs. 8 & 24). In their initial motion to dismiss, the Defendants alleged that the court lacked subject-matter jurisdiction because (1) Resnick's § 1983 claim was meritless, and (2) Resnick failed to join Jeff Miller, a necessary and non-diverse party who would defeat diversity jurisdiction. The amended complaint premises jurisdiction on the Court's federal question jurisdiction, abandoning diversity jurisdiction.[4]

The Defendants maintain, however, that the Plaintiffs' due process claim pursuant to § 1983 claim is meritless, and the Defendants argue that any claim under the DTSA must fail because the statute did not become effective until May 11, 2016, and any action by the Defendants occurred before the statute was effective. Thus, the Defendants argues the Plaintiffs' DTSA claim also fails as a matter of law. Finally, the Defendants assert that they are entitled to legislative and/or qualified immunity.

---

[4] Because the amended complaint sufficiently alleges federal question jurisdiction, the Court need not discuss dismissal pursuant to FED.R.CIV.P. 12(b)(1).

## A. Standard of Review

When evaluating a motion to dismiss pursuant to FED.R.CIV.P. 12(b)(6), the court must take the facts alleged in the complaint as true and construe them in the light most favorable to the plaintiff. *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1321–22 (11th Cir. 2012). The Court must also accept well-pled facts as true, but the Court is not required to accept a plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions").

A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face. *See Iqbal*, 556 U.S. at 679 (explaining "only a complaint that states a plausible claim for relief survives a motion to dismiss"); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561-62 (2007) (retiring the prior "unless it appears beyond doubt that the plaintiff can prove no set of facts" standard). "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). In evaluating the sufficiency of a plaintiff's pleadings, the Court must indulge reasonable inferences in the plaintiff's favor, "but we are not required to draw plaintiff's inference." *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d

1242, 1248 (11th Cir. 2005). Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. *Id.* *See also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

In *Twombly*, the Supreme Court emphasized that a complaint "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." 550 U.S. at 555. Factual allegations in a complaint need not be detailed but "must be enough to raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* (internal citations and emphasis omitted). In *Iqbal*, the Supreme Court reiterated that although FED.R.CIV.P. 8 does not require detailed factual allegations, it does demand "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." 556 U.S. at 678. The well-pled allegations must nudge the claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 570.

### B. Defendants' Original Motion to Dismiss

Because the Court has granted the Plaintiffs' motion to amend the complaint, the defendants' original motion to dismiss (doc. 8) is due to be denied as moot. Nevertheless, "if some of the defects raised in the original motion remain

in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would be to exalt form over substance." *Sibille v. Davis*, 2013 WL 6038720, *1 (M.D. Ala., 2013).

In their reply to the Plaintiffs' response to the motion to dismiss (doc. 24), the Defendants incorporate by reference their arguments relating to the Plaintiffs' § 1983 due process claim. The Plaintiffs have fully briefed the issue. (Docs. 19 & 25). Thus, to avoid wasting the parties' and this court's resources, the court will address the issue, and concludes that the Plaintiffs' § 1983 claim is due to be dismissed.

### A. Motion to Dismiss Plaintiffs' § 1983 claim

The Plaintiffs purport to bring a § 1983 claim alleging a violation of their right to procedural due process under the Fourteenth Amendment to the United States Constitution. The Plaintiffs assert that their right to procedural due process was violated when the City deprived them of the two percent commission to which they were entitled without providing them a hearing or any other process. In support of their claim, the Plaintiffs argue that they have a property interest in either the commission or their confidential information; they were deprived of these interests; and there is no state-court remedy that could adequately provide them with due process. The Plaintiffs cite to no precedential case law which

supports their argument. The closest case on point belies the idea that the Plaintiffs' breach of contract claim rises to the level of a constitutional deprivation. *Med. Laundry Servs., a Div. of OPLCO, Inc. v. Bd. of Trustees of Univ. of Alabama*, 906 F.2d 571, 573 (11th Cir. 1990) ("[A] simple breach of contract does not rise to the level of a constitutional deprivation."). The Plaintiffs argue that *Medical Laundry Services* is not binding because the underlying contract at issue was allegedly breached by the complaining plaintiff, though they offer no reason why that distinction would be meaningful here.

Relying on *Lujan v. G & G Fire Sprinklers, Inc.*, the Defendants argue that the Plaintiffs' simple breach of contract claim does not rise to the level of a constitutional claim. 532 U.S. 189, 196 (2001). The Court agrees. In *Lujan,* the United States Supreme Court held that as long as there is an adequate state law remedy -- such as a breach of contract action in state court -- there is no violation of the right to procedural due process. *Id.* "Though we assume for purposes of decision here that [the Plaintiff] has a property interest in its claim for payment, it is an interest . . . that can be fully protected by an ordinary breach-of-contract suit." *Id*. at 196.

The Plaintiffs do not dispute that a breach of contract action is available to them in Alabama's state court system. Rather, in a conclusory fashion, they assert

that *Lujan* is not applicable "when a plaintiff has a present entitlement to his property interest." (Doc. 25 at 6). While it is true that being denied certain "present entitlements" without due process can constitute a constitutional violation in limited circumstances, this is not such a case.

In *Lujan*, the state of California withheld funds from a contractor in violation of a contract after receiving notice that the contractor had violated certain provisions of California's Labor Code. 532 U.S. at 196. The Court held that even assuming the plaintiff was "entitled to be paid in full," the plaintiff could vindicate its rights in an ordinary breach-of-contract suit, so there was no violation of a constitutional right to due process. *Id.* In dicta, the Court suggested that in some cases, a plaintiff may have a constitutional claim when he is "denied a right by virtue of which he was presently entitled either to exercise ownership dominion over real or personal property, or to pursue a gainful occupation." *Id.* Referencing this language about present entitlements, the Plaintiffs appear to argue that because they are presently entitled to their commission and confidential information, any state-court remedy is inadequate as a matter of law.

Assuming without deciding that the Plaintiffs have protected property interests in future revenue streams or confidential information, their claim still fails because they do not have a "present entitlement" within the meaning of *Lujan*.

11

Claiming present entitlement to some property interest is not sufficient, by itself, to support a § 1983 claim for a violation of the right to procedural due process in this context.

The Plaintiffs rely on *Baird v. Bd. of Educ. for Warren Cmty Unit Sch. Dist. No. 205*, 389 F.3d 685 (7th Cir. 2004), to assert that their "present entitlement" to their commission is sufficient to assert a § 1983 claim. Their reliance is misplaced. In *Baird*, the Seventh Circuit held that a school superintendent fired in the first year of a three-year contract had a present entitlement to employment and that the deprivation of that entitlement did not have an adequate remedy in a breach-of-contract action. *Baird*, 389 F.3d at 691. Critically, the court differentiated between a contractual interest of payment for a breach of contract and termination in the employment context. The Court reasoned that "[w]hile [a post-deprivation remedy] does provide a species of due process, a lawsuit does not satisfy the requirement of promptness, which is essential if the employee is to pursue time-sensitive remedies such as reinstatement." *Id.* at 692. The court explained that employment -- especially employment by a school -- featured "significant non-monetary rewards," so that any remedy offered by a lawsuit would result in a "hollow victory." *Id.* (internal citations omitted). For these reasons, the Seventh Circuit held that a post-deprivation remedy would be insufficient as a matter of

law, and the school in question was required to give the plaintiff a constitutionally adequate pre-deprivation hearing.

The Plaintiffs offer only conclusory statements that they have "a viable Section 1983 constitutional claim," and they have "sufficiently pleaded a claim for a Section 1983 violation." (Doc. 19 at 2). Simply stating that they have a present entitlement to a property interest is insufficient to counter the Defendants' motion to dismiss. The conclusory assertion that the Defendants' argument "is especially not true given Resnick's allegation that Defendants misappropriated his trade secrets" (doc. 25, at 6) is also insufficient. Because there is nothing to suggest that the Plaintiffs' breach of contract claim rises to the level of a constitutional claim, their § 1983 claim is due to be dismissed.[5]

**B. Motion to Dismiss DSTA Claim**

In the amended complaint, the Plaintiffs allege that the City and its officials misappropriated their trade secrets when the City used the trade secrets and confidential information to enter into a contract to supply electrical power to the

---

[5] The Defendants also raised defenses based on legislative and qualified immunity in their original motion to dismiss. However, these defenses are raised only in passing in their most recent motion to dismiss (doc. 24), and no other relevant briefing is incorporated by reference. Moreover, it is not at all clear what effect, if any, the dismissal of the Plaintiffs' § 1983 claim has on the Defendants' arguments relating to immunity, and any such arguments have not been made at this time. Because the original motion to dismiss must be dismissed as moot, the arguments relating to immunity are insufficiently developed at this time, and the Court grants the Defendants' motion to dismiss the amended complaint, the Court pretermits discussion of the Defendants' motion to dismiss on immunity grounds.

City's residents without paying the Plaintiffs their commission. (Doc. 20-1 at 15-16). The Defendants do not deny that they entered into a new power supply contract. (Doc. 24 at 4). However, they argue that because the City entered into this contract in December 2015, before the DTSA became effective, the statute does not apply, and the claim fails as a matter of law.

Under the DTSA, "[a]n owner of a trade secret that is misappropriated may bring a civil action . . . if the trade secret is related to a product or service used in, or intended for use in, interstate or foreign commerce." 18 U.S.C. § 1836(b)(1). In order to plead a violation of the DTSA, a plaintiff must allege that he (i) "possessed information of independent economic value" that (a) "was lawfully owned by" the plaintiff, (b) for which the plaintiff "took reasonable measures to keep secret," and (ii) the defendant "used and/or disclosed that information" despite (iii) "a duty to maintain its secrecy." *Trinity Graphic, USA, Inc. v. Tervis Tumbler Co.*, 320 F. Supp. 3d 1285, 1293 (M.D. Fla. 2018).

The Act defines "trade secret" as:

> all forms and types of financial, business, scientific, technical, economic, or engineering information, including patterns, plans, compilations, program devices, formulas, designs, prototypes, methods, techniques, processes, procedures, programs, or codes, whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if —

> (A) the owner thereof has taken reasonable measures to keep such information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

18 U.S.C. § 1839(3). Misappropriation includes the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . acquired [the trade secret] under circumstances giving rise to a duty to maintain the secrecy of the trade secret or limit the use of the trade secret." 18 U.S.C. § 1839(5)(B).

The Plaintiffs allege that the confidential information they shared with the City, including "the identities of suppliers, relationships with employees of suppliers, the terms on which those suppliers might supply power, and their pricing information," constitutes trade secrets within the meaning of DTSA. (Doc. 20-1 at 16). The Plaintiffs further allege that the City continues to use these trade secrets "to engage in transactions and communications with [the electrical provider] that would not be available were it not for Plaintiffs' disclosure of the Trade Secrets to the Troy Defendants." (*Id.* at 17).

The Defendants do not argue that the supplier information is not a trade secret, nor do they argue that there was no misappropriation. Instead, the Defendants argue that because the City entered into the allegedly violative

agreement with an electrical power provider on December 17, 2015, any misappropriation must have taken place before that date, nearly six months before DTSA's effective date. (Doc. 24 at 4-5). Therefore, according to the Defendants, because any misappropriation in this case took place in December 2015, before the DTSA's effective date, and the DTSA is not retroactively applied, *Agilysys, Inc. v. Hall*, 258 F. Supp. 3d 1331, 1348 (N.D. Ga. 2017), the Plaintiffs' claim must fail.

It is undisputed that the DTSA does not provide for retroactive applicability, and its effective date was May 11, 2016. The only allegation in the amended complaint about continued use of trade secrets is found in paragraph 64.

> 64. Upon information and belief, the Troy defendants are continuing to use the Trade Secrets to engage in transactions and communications with Constellation that would not be available were it not for Plaintiffs' disclosure of the Trade Secrets to the Troy Defendants.

(Doc. 20-1 at 17, ¶ 64).

"[W]hile the alleged acquisition of a trade secret before [the Act's effective date] is not a cognizable claim under the DTSA, its use after May 11, 2016 can be." *Philips Med. Sys. Nederland B.V. v. TEC Holdings, Inc.*, 2018 WL 2009430, *8 (N.D. Ga. 2018). The Plaintiffs do not allege any facts in the amended complaint that would support the allegation of use by the Defendants of any trade secrets after the enactment of the DTSA. At best, the facts before the Court

indicate that any alleged use of trade secrets by the Defendants occurred before December 17, 2015, culminating with the approval of the power contract on that date by the Defendants.

The Plaintiffs' assertion based on "information and belief" without any supporting facts is simply insufficient to support a claim that any actions by the Defendants occurred after the effective date of the DTSA. *See Dairyland Animal Clinic, S.C. v. Amatheon, Inc.*, 2016 WL 11129919 (S.D. Fla. 2016) ("Moving to the allegations that are present, the Complaint recites – solely "on information and belief" and without any factual predicates – the legal elements of a TCPA violation .... [T]he Court declines to accept Dairyland's "on information and belief" allegations."). Conclusory allegations founded on "information and belief" are insufficient to defeat a motion to dismiss. *Mann v. Palmer*, 713 F.3d 1306, 1315 (11th Cir. 2013) (the court does "not have to take as true … allegations 'upon information and belief'"); *Norfolk S. Ry.Co. v. Boatright R.R. Prod., Inc.*, 2018 WL 2299249, *2 (N.D. Ala. 2019) (quoting *Mann, supra*.). The Plaintiffs allege no facts from which the Court could conclude that the Defendants used or misappropriated any trade secrets after December 17, 2015. Consequently, the Court concludes that the Plaintiffs have failed to adequately state a claim of

ongoing use or misappropriation sufficient to survive the Defendants' motion to dismiss.

C.  **Supplemental Jurisdiction**

Having determined that the Court does not have jurisdiction over the Plaintiffs' federal claims, the Court declines to exercise supplemental jurisdiction over the Plaintiffs' state law breach of contract and declaratory judgment claims pursuant to 28 U.S.C. § 1367.  These claims will be dismissed without prejudice.

V.  **CONCLUSION**

Accordingly, for the reasons as stated, and for good cause, it is

ORDERED as follows that:

(1) The Plaintiffs' motion for leave to amend the complaint (doc. 20) be and is hereby GRANTED.

(2) The Defendants' motion to dismiss (doc. 8) be and is hereby DENIED as moot.

(3) The Defendants' motion to dismiss (doc. 24) the Plaintiffs' federal claims be and is hereby GRANTED and these claims be and are hereby DISMISSED with prejudice;

(4)  The Plaintiffs' state law claims be and are hereby DISMISSED without prejudice; and

(5)     This case be and is hereby DISMISSED.

DONE this 13th day of May, 2019.

                                          /s/ Emily C. Marks
                                  EMILY C. MARKS
                                  CHIEF UNITED STATES DISTRICT JUDGE